94       CASES IN THE SUPREME COURT

Pond et al. vs. Obaugh et al.       [JANUARY

### POND ET AL. VS. OBAUGH ET AL.

A party conveys property by deed, duly recorded in another State, to a trustee for the benefit of his wife and children; afterwards, upon the death of his wife, he removes to this State, and sells the property to a third person: the purchaser connot defend as "an innocent purchaser," when it appears that he was informed that the children had a claim to the property, and was referred to one who could give further information.

*Appeal from Hot Spring Circuit Court in Chancery.*

Hon. JOHN C. MURRAY, Circuit Judge.

TRAPNALL, for the appellants.

WATKINS & CURRAN and GALLAGHER, for appellees.

Mr. Justice WALKER delivered the opinion of the Court.

On the 8th of January, 1833, William Pond, a resident of Edgefield District, South Carolina, by deed conveyed to Albert Rambo, in trust for the use and benefit of his wife and the complainants, their infant children, a negro woman, Maria, and her three children, Stephen, Emily, and Harriet, to be held exclusively for the benefit of his wife during his life, or in case of his death, her widowhood: and, at the death or marriage of the wife, to be equally divided amongst her children.

The deed was, on the 8th of April, 1833, duly acknowledged and entered of record in the Recorder's Office of said District. In the autumn of the year 1839, Mary Pond, the wife of William Pond, died in said District and State, and within a few weeks

.thereafter, William, the father of complainants, removed with his family of children, to Hot Spring county, Arkansas, and brought with him all of said slaves, and the increase of the woman Maria, (except Stephen, who was mortgaged or left to secure the payment of a debt in South Carolina), where he continued to reside, and kept the slaves in his possession until August or September, 1844, when he sold to defendant, Barkman, the slaves Emily, Harriet, Tom, and Peter, children of Maria, for the sum of $900, and retained the other slaves in his possession.

James H. Obaugh married Matilda, one of the children of the defendant, William Pond, and they, with the other children, to whose use the property had been conveyed in trust, on the 18th of August, 1846, filed their bill in chancery, to enjoin the further sale or removal of said slaves, and to recover the whole of them, or their value.

The grounds for equitable relief, are not seriously controverted, and if the facts of the case show that the complainants are entitled to a decree, the decision of the court below was evidently correct.

It is clearly proven, that William Pond, (who was a dissipated man, and had already wasted, or made way with other property received by his wife), bought the woman Maria and her children, and paid for them by exchanging a negro man and other property received from his wife's relatives, and to prevent them also from being sold in one of his drinking sprees, conveyed them to Albert Rambo, in trust, for the sole use and benefit of his wife and children, his children to succeed their mother in the use of the property. At that time, William Pond was not in debt; and, although he denies that this woman and children were paid for with property that came to him in right of his wife, he substantially admits the execution of the deed, and taking his account of the purpose, for which it was executed, as true, it could not change the legal effect of the deed. But, upon all these points, the proof, we think, clearly in favor of the complainants. The deed of trust was not only proven by the transcript of the

record from South Carolina, where it had been recorded, but the original was exhibited and proven by the subscribing witness.

By the terms and legal effect of the deed, at the death of their mother, Mrs. Pond, the slaves were to become the property of the complainants. This is conclusive upon William Pond. Barkman claims as an innocent purchaser under him without notice. In order to make this defence good, a defendant who relies upon it, must, in his answer, not only deny notice at the time of his purchase, but also down to, and at the time of, the payment of the purchase money. *Byers & McDonald vs. Fowler et al.*, 6 *Eng.* 220. This Barkman has not done. Indeed, his answer is not a positive denial of all notice prior to his purchase : but, even if it did, and also until after the payment, we think the proof sufficient to overturn the answer in this particular. It is in proof, that he made inquiry, and was informed that complainants had a claim to the slaves, and although his informant could not give him certain information as to the validity of the claim, he was referred to one who could give further information. Barkman seems, before this, to have had sufficient information to put him upon inquiry, and was then endeavoring to ascertain the facts. Upon receiving further information, said he would not buy the negroes. So that in any event the notice was fully sufficient to put him upon inquiry, and as he is thereby deprived of this defence, he stands in no better condition than William Pond, of whom he purchased.

Under all the circumstances and facts of the case, we are satisfied that the complainants were clearly entitled to recover the slaves, or if made way with, their value.

The decree of the court below in favor of the complainants against Barkman for the value of the slaves, which it seems, he had made way with, and against William Pond for the slaves in his possession, is well sustained by the evidence under the case made by the bill. Let the decree be affirmed.

Absent, Mr. Justice SCOTT.